UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BRANDON MEYERS                      CIVIL ACTION NO. 6:13-CV-00783

VERSUS                              JUDGE HAIK

COMMISSIONER OF THE SOCIAL          MAGISTRATE JUDGE HANNA
SECURITY ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded

for further consideration consistent with this report and recommendation.

### BACKGROUND

The claimant, Brandon Meyers, was born on February 2, 1992.[1]  He has a ninth

grade education[2] and has never had a job.[3]  Mr. Meyers was diagnosed with cystic

fibrosis when he was fifteen years old,[4] met the criteria for childhood medical

disability, and received Supplemental Security Income ("SSI") benefits through his

eighteenth birthday.  When he reached age eighteen, his disability status was

---

[1]     Rec. Doc. 7-1 at 65, 74, 77.

[2]     Rec. Doc. 7-1 at 42.

[3]     Rec. Doc. 7-1 at 43.

[4]     Rec. Doc. 7-1 at 56, 64, 238.

reevaluated under the adult standards, and his SSI benefits were terminated on June 1, 2010.[5]

Mr. Meyers requested a hearing before an Administrative Law Judge.[6]  A hearing was held on February 6, 2012 before Administrative Law Judge ("ALJ") Robert Grant.[7]  The ALJ issued an unfavorable decision on March 7, 2012.[8]  Mr. Meyers requested review by the Appeals Council, but it was denied.[9]  Therefore, the ALJ's ruling is the Commissioner's final decision in this matter.  In April 2013, Mr. Meyers instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[10]  Mr. Meyers now argues that the Commissioner erred in failing to find that he is disabled because of his disorders.

### ASSIGNMENT OF ERRORS

Mr. Meyers contends that the Commissioner erred in finding him not disabled. More specifically, he contends, first, that the ALJ erred at step three of the sequential evaluation process, by failing to apply the proper legal standards when evaluating

---

[5]     Rec. Doc. 7-1 at 56, 94.

[6]     Rec. Doc. 7-1 at 96.

[7]     Rec. Doc. 7-1 at 35-54.

[8]     Rec. Doc. 7-1 at 21-28.

[9]     Rec. Doc. 7-1 at 9, 5.

[10]    Rec. Doc. 1.

whether the combination of his cystic fibrosis symptoms met or medically equaled any listed impairments, particularly the listing for malnutrition, and by reaching a conclusion that is not supported by substantial evidence.   Second, Mr. Meyers contends that the ALJ erred at step two of the required analysis by failing to apply the proper legal standards in evaluating whether his claimed mental impairments are severe.   Third, Mr. Meyers contends that the ALJ erred in evaluating his residual functional capacity.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[11]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[12]   Substantial evidence is more than a mere scintilla and less than a preponderance.[13]   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[14]   Finding substantial evidence requires

---

[11]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[12]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[13]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[14]     *Boyd v. Apfel,* 239 F.3d at 704.

scrutiny of the entire record as a whole.[15]  In applying this standard, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner.[16]

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[17]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[18]  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[19]

The Commissioner uses a sequential five-step inquiry to determine whether an adult claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.  At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment

---

[15]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[16]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[17]     *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[18]     42 U.S.C. § 423(d)(1)(A).

[19]     20 C.F.R. § 404.1572(a)-(b).

listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1, will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[20]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[21] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[22]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[23]

---

[20]     *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[21]     20 C.F.R. § 404.1520(a)(4).

[22]     20 C.F.R. § 404.1545(a)(1).

[23]     20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps.[24]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[25]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[26]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[27]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[28]

In this case, the Commissioner did not make a finding at step one regarding Mr. Meyers's engagement in substantial gainful activity because this step is not used for redetermining disability at age eighteen.[29]  Mr. Meyers testified at the hearing that he

---

[24]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[25]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[26]     *Fraga v. Bowen*, 810 F.2d at 1304.

[27]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[28]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[29]     Rec. Doc. 7-1 at 22, citing 20 C.F.R. 416.987(b).

has never been gainfully employed[30] and there is no evidence in the record refuting that contention.

At step two, the ALJ found that Mr. Meyers has the following severe impairment:  cystic fibrosis.[31]  This finding is supported by evidence in the record. The ALJ also found that Mr. Meyer's claimed mental impairments of anxiety and depression are not severe.[32]  Mr. Meyers argues that the ALJ erred in failing to find that his mental impairments are severe.

At step three, the ALJ found that Mr. Meyers does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[33] Mr. Meyers argues that this finding was incorrect because the ALJ failed to consider the effect that cystic fibrosis has on his digestive system and improperly evaluated his mental impairments.

The ALJ then found that Mr. Meyers retains the residual functional capacity to perform sedentary work with certain restriction.[34]  Mr. Meyers argues that the ALJ improperly evaluated his residual functional capacity.

---

[30]     Rec. Doc. 7-1 at 43.

[31]     Rec. Doc. 7-1 at 23.

[32]     Rec. Doc. 7-1 at 23.

[33]     Rec. Doc. 7-1 at 24.

[34]     Rec. Doc. 7-1 at 24.

-7-

At step four, the ALJ found that Mr. Meyers has no past relevant work.[35]  Mr. Meyers does not disagree with this finding, which is supported by evidence in the record.

At step five, the ALJ found that there are jobs that exist in the national economy that Mr. Meyers can perform; accordingly, the ALJ found that Mr. Meyers is not disabled.[36]  The ALJ then concluded that Mr. Myers's disability ended on June 1, 2010, and that he has not become disabled again since that date.[37]  Mr. Meyers argues that the Commissioner's conclusion that he is not disabled is erroneous.

**DISCUSSION**

Mr. Meyers's first argument is that the ALJ erred in evaluating the symptoms of his cystic fibrosis.  His second argument is that the ALJ erred in evaluating his claimed mental impairments.  His third argument is that the ALJ erred in evaluating his residual functional capacity.  These arguments will be considered in turn.

**A.   DOES MR. MEYER'S CYSTIC FIBROSIS MEET OR MEDICALLY EQUAL A LISTING?**

It is undisputed that Mr. Meyers has cystic fibrosis, and he alleges that his cystic fibrosis is disabling.  He also alleges that his mental impairments, when

---

[35]     Rec. Doc. 7-1 at 26.

[36]     Rec. Doc. 7-1 at 26.

[37]     Rec. Doc. 7-1 at 27.

combined with his cystic fibrosis, are disabling.  In a disability analysis, the Commissioner must consider all potential impairments.[38]  A physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.[39]  Therefore, at an early stage of the sequential analysis, the ALJ must decide whether an alleged impairment is an impairment at all within the specialized meaning of that term.  If not, there is no error in failing thereafter to mention or analyze it further.[40]  An impairment is not severe only if it is a slight abnormality that has such a minimal effect on the individual that it would not be expected to interfere with an individual's ability to work.[41]

The Social Security regulations define cystic fibrosis as "a disorder that affects either the respiratory or digestive body systems or both and is responsible for a wide and variable spectrum of clinical manifestations and complications."[42]  According to the Cystic Fibrosis Foundation, "[c]ystic fibrosis (CF) is a life-threatening genetic

---

[38]       See generally 20 C.F.R. § 404.1523; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

[39]       42 U.S.C.A. § 423(d)(3).

[40]       *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004).

[41]       *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), interpreting 20 C.F.R. § 404.1520(c).

[42]       20 C.F.R. Pt. 404, Subpt. P, App. 1., § 3.0(D).

disease that primarily affects the lungs and digestive system. . . .  In people with CF, a defective gene and its protein product cause the body to produce unusually thick, sticky mucus that: [c]logs the lungs and leads to life-threatening lung infections [and] [o]bstructs the pancreas and stops natural enzymes from helping the body break down food and absorb vital nutrients.  In the 1950s, few children with CF lived to attend elementary school.  Since then, tremendous progress in understanding and treating CF has led to dramatic improvements in the length and quality of life for those with CF.  Many people with the disease can now expect to live into their 30s, 40s and beyond."[43]

The Social Security regulations expressly require that "[t]he pulmonary manifestations of this disorder [cystic fibrosis] should be evaluated under 3.04.  The nonpulmonary aspects of cystic fibrosis should be evaluated under the digestive body system (5.00).  Because cystic fibrosis may involve the respiratory and digestive body systems, the combined effects of the involvement of these body systems *must* be considered in case adjudication."[44]

---

[43]     Cystic Fibrosis Foundation, http://www.cff.org/AboutCF (last visited on July 8, 2014).

[44]     20 C.F.R. Pt. 404, Subpt. P, App. 1., § 3.0(D) (emphasis added).

Here, however, the ALJ's discussion of whether Mr. Meyers's impairments meet or medically equal a listing is confined to two sentences, to wit:  "The undersigned has considered all of the impairments listed in Appendix 1.  The evidence of record does not support a finding that claimant's impairment meets or equals any listed impairment."[45]  This is insufficient.  The ALJ reached his conclusion that none of Mr. Meyers's claimed impairments are disabling without any discussion whatsoever of the criteria included in any listing or, more particularly, of the criteria set forth in Listing 3.04 or Listing 5.00, as expressly required by the regulations for a person with cystic fibrosis.  The ALJ also failed to explain how Mr. Meyers might or might not satisfy the criteria of those or any other listings.  An "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."[46]  Furthermore, when discussing the effect that cystic fibrosis has had on Mr. Meyers's residual functional capacity, the ALJ discussed only his pulmonary functioning and omitted any discussion of the digestive system aspect of the disease.

In *Audler v. Astrue*, the ALJ, at step three of the analysis:

---

[45]       Rec. Doc. 7-1 at 24.

[46]       *Williams v. Astrue*, No. 09-0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), which in turn cites 42 U.S.C. § 405(b)(1).

summarily concluded that "[t]he medical evidence indicates that the claimant has status post lumbar laminectomy, cervical disc herniation, headaches and chronic neck and back pain, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." The ALJ did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment.[47]

The Fifth Circuit concluded that "[s]uch a bare conclusion is beyond meaningful judicial review."[48]   The court then went on to explain that:

> By the explicit terms of the statute [42 U.S.C. § 405(b)(1)], the ALJ was required to discuss the evidence offered in support of Audler's claim for disability and to explain why she found Audler not to be disabled at that step. Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, "we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not."[49]

---

[47]     *Audler v. Astrue*, 501 F.3d at 448.

[48]     *Audler v. Astrue,* 501 F.3d at 448, quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[49]     *Audler v. Astrue*, 501 F.3d at 448, quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).

In Mr. Meyers's case, the ALJ did even less.  He stated only that "[t]he evidence of record does not support a finding that claimant's impairment meets or equals any listed impairment."[50]  He did not explain what listings he considered or how he reached the conclusion that Mr. Meyers does not meet or equal them.

In accordance with the Fifth Circuit's reasoning, the undersigned is unable to determine whether the Commissioner's conclusion at step three is or is not based on substantial evidence.  Therefore, the undersigned recommends that this matter be remanded for a thorough analysis of whether Mr. Meyers has an impairment or combination of impairments that meets or medically equals a listed impairment.

In particular, the undersigned notes that evidence in the record shows that Mr. Meyers either meets or comes very close to meeting Listing 5.08, which addresses weight loss due to any digestive disorder despite continuing treatment as prescribed, i.e., malnutrition.  This condition is evaluated by using the Body Mass Index ("BMI"),[51] which is "the ratio of your weight to the square of your height,"[52] and calculated by dividing a person's weight in pounds by his height in inches times his

---

[50]     Rec. Doc. 7-1 at 24.

[51]     20 C.F.R. Pt. 404, Subpt. P, App. 1., § 5.00(G)(1).

[52]     20 C.F.R. Pt. 404, Subpt. P, App. 1., § 5.00(G)(2).

height in inches and then multiplying the result by 703.[53]  A BMI of less than 17.50, calculated on at least two evaluations at least sixty days apart but within a consecutive six-month time period satisfies Listing 5.08.

In this case, the record does not contain reliable data on which Mr. Meyers's BMI on various dates can be calculated and compared.  His height and weight were recorded in various treatment notes from his doctors on dates from April 19, 2010 to October 27, 2011.[54]  On those dates, his weight ranged from a low of 101 pounds to a high of 109 pounds.  But his height was stated as being 5'4" on five of those occasions (including the first and last occasions), as 5'6" on three occasions, and as 5'7" on two occasions, precluding an accurate calculation of his BMI.  At Dr. Hales's office, he was always 5'4" tall, he was 5'6" tall when measured at Dr. Viator's office, and he was 5'7" when measured by Nurse Broussard.  At the hearing, Mr. Meyers testified that he is 5'7" tall and weighed 108 pounds.[55]  If that information was accurate, then his BMI on that date was only 16.9.  The record indicates that, on October 10, 2011, his height was 5'7" and his weight was 106 pounds, making his BMI 16.6.  Using those two BMI calculations, which are more than sixty days apart

---

[53]     20 C.F.R. Pt. 404, Subpt. P, App. 1., § 5.00(G)(2)(b).

[54]     Rec. Doc. 7-1 at 218, 240, 251, 252, 257, 258, 268, 270, 272, 274.

[55]     Rec. Doc. 7-1 at 39.

but within six months of each other, Listing 5.08 is satisfied, and Mr. Meyers is disabled.  The record also contains height and weight information for a doctor's visit on an intervening date, October 27, 2011.  On that date, Mr. Meyers's BMI was 18.4, but only if he shrunk by three inches in the two weeks after the preceding visit.  If he was actually 5'7" tall on October 27, 2011, as he was reported to be on both October 10, 2011 and February 6, 2012, then his BMI was 16.6.  Similarly, when using the measurements by Nurse Broussard on July 6, 2011 and October 10, 2011, his BMI is 16.5 and 16.6, respectively, again satisfying the listing.  Therefore, the evidence in the record can be interpreted as supporting a finding that Mr. Meyers meets this listing and is presumptively disabled.

Even if Mr. Meyers's height was as recorded in each of the referenced treatment notes, which simply is not possible, the highest calculable BMI was 18.4 and the lowest was 16.5, very nearly meeting the listing for weight loss due to a digestive disorder.  The ALJ should have addressed whether Mr. Meyers met this listing, and he should have explained why Mr. Meyers does or does not meet this listing.  The ALJ also should have discussed whether the combination of the pulmonary effects and the digestive effects of Mr. Meyers's cystic fibrosis are disabling.  Finally, the ALJ failed to discuss whether the combination of Mr. Meyers's claimed mental impairment, along with the pulmonary effects and digestive

effects of his cystic fibrosis, are disabling.  The ALJ's failure to undertake such an analysis mandates remand of this action for further administrative review.

## B.   ARE MR. MEYER'S MENTAL IMPAIRMENTS SEVERE?

Mr. Meyers contends that he suffers with anxiety and depression arising out of his chronic medical condition.  On July 7, 2010, Dr. Timothy A. Allain reported that Mr. Meyers was "anxious all the time [and] depressed," had agoraphobia, and had trouble sleeping because he worries a lot.[56]  He prescribed Zoloft for Mr. Meyer's anxiety.  On February 1, 2011, Dr. Viator referred Mr. Meyers to psychiatric nurse Aimee Broussard, noting that he had diagnosed depression, anxiety, and agoraphobia and stating that Mr. Meyers was scared to go outside because of his cystic fibrosis and scared to get sick.[57]  On that same date, Dr. Viator prescribed both Zoloft and Xanax for the depression and agoraphobia.[58]

On March 3, 2011,[59] Aimee Broussard, APRN, BC, performed a psychiatric evaluation and diagnosed Mr. Meyers with depression NOS and anxiety NOS.  She assigned a current GAF of 41, with a GAF of 51 for the past year.  A GAF score of

---

[56]      Rec. Doc. 7-1 at 240.

[57]      Rec. Doc. 7-1 at 244.

[58]      Rec. Doc. 7-1 at 252.

[59]      Rec. Doc. 7-1 at 261-263.

41 to 50 is indicative of "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).[60] Her initial treatment plan was to continue his Zoloft prescription, increase his Alprazolam[61] prescription, and add a prescription for Buspar.[62]

At his April 7, 2011 appointment with Nurse Broussard, Mr. Meyers reported some improvement.[63]  She increased his Buspar prescription and added some medications, and scheduled him for a return visit in two months.  But Mr. Meyers returned to see Nurse Broussard less than a month later.  On May 3, 2011, he told her that he had gone to the hospital emergency room because of a panic attack.[64]  This is corroborated in a record from Dauterive Hospital dated May 2, 2011.[65]  Nurse

---

[60]     American Psychiatric Association:  Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, p. 32 (emphasis and capitalization in original) ("DSM-IV").

[61]     Xanax is a brand name of the drug Alprazolam.  National Institutes of Health, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a684001.html#brand-name-1 (last visited July 11, 2014).

[62]     Buspar is a brand name of the drug Buspirone, which is used to treat anxiety disorders.  National Institutes of Health,  http://www.nlm.nih.gov/medlineplus/druginfo/meds/a688005.html (last visited July 11, 2014).

[63]     Rec. Doc. 7-1 at 260.

[64]     Rec. Doc. 7-1 at 259.

[65]     Rec. Doc. 7-1 at 292-293.

Broussard again adjusted his medications.[66]  At the next appointment, on July 6, 2011,[67] Mr. Meyers reported that he was sleeping better.  He was still experiencing anxiety symptoms but they were less frequent or less intense.  His Buspar and Trazadone[68] prescriptions were continued and his Alprazolam prescription was increased.  On October 10, 2011,[69] Mr. Meyers again reported improvement in his anxiety and depression symptoms.  He reported that his anxiety symptoms had not been occurring, and he described no depressive symptoms on that date.  However, he was still diagnosed with an active depressive disorder and an active anxiety disorder. On December 21, 2011, Nurse Broussard completed a "Mental Functional Capacity Assessment" in which she opined that "Mr. Meyers has severe anxiety [and] depression, the severity and chronicity of his mental illness adversely affect his ability to function [at] home [and] in society; the patient would have great difficulty in a work setting."[70]  This assessment indicates that, although Mr. Meyers's condition had improved, Nurse Broussard believed that it remained severe.  At the hearing in

---

[66]     Rec. Doc. 7-1 at 259.

[67]     Rec. Doc. 7-1 at 258.

[68]     Trazadone is an anti-depressant.  Drugs.com, http://drugs.com/trazadone.html (last visited on July 11, 2014).

[69]     Rec. Doc. 7-1 at 257.

[70]     Rec. Doc. 7-1 at 283.

February 2012, Mr. Meyers stated that he did not really have friends and that he became agitated when spending time with people.[71]

In his ruling, the ALJ gave Nurse Broussard's opinions no weight whatsoever, finding that her opinions are not in keeping with her progress notes and not supported by the evidence in the record as a whole.[72]  Although Nurse Broussard's treatment notes do reflect improvement in Mr. Meyers's condition over the course of 2011, there is no psychiatric or psychological opinion in the record to contradict the opinions she expressed in the December 2011 assessment.  Therefore, it appears that, in giving no weight whatsoever to her opinions, the ALJ was substituting his own opinions for those of Nurse Broussard.  That was error.  The law is clear that "[t]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[73]  Furthermore, it is improper for an ALJ to rely upon his own unsupported opinion as to the limitations presented by the applicant's medical conditions.[74]

---

[71]     Rec. Doc. 7-1 at 47.

[72]     Rec. Doc. 7-1 at 24.

[73]     *Loza v. Apfel*, 219 F.3d at 393.

[74]     *Williams v. Astrue*, 355 Fed. App'x 828, 832 n. 6 (5th Cir. 2009).

-19-

As noted previously, an impairment is not severe only if it is a slight abnormality that has such a minimal effect on the individual that it would not be expected to interfere with an individual's ability to work.[75]   The ALJ's conclusion that Mr. Meyer's anxiety and depression "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere"[76] was reached by totally disregarding Nurse Broussard's opinions. Therefore, it was reached without applying the proper legal standard and must be reconsidered.

**C.      IS THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY EVALUATION SUPPORTED BY SUBSTANTIAL EVIDENCE?**

Mr. Meyers's final contention is that the ALJ's residual functional capacity evaluation is not supported by substantial evidence.   The undersigned agrees.   The ALJ discussed only the pulmonary effects of Mr. Meyers's cystic fibrosis when reaching his conclusion that Mr. Meyers retains the capacity to perform sedentary work.   No consideration is given to effects of that disease on Mr. Meyers's digestive system or to his claimed mental impairments.   This in itself mandates remand.

---

[75]      *Stone v. Heckler*, 752 F.2d at 1101, interpreting 20 C.F.R. § 404.1520(c).

[76]      Rec. Doc. 7-1 at 23.

The ALJ also opined that Mr. Meyers failed to seek "regular medical care." That statement is not supported by the evidence in the record.  The record shows that Mr. Meyers saw Dr. J. Darvin Hales on seven occasions between May 15, 2009 and June 27, 2011, saw Dr. Timothy Viator on three occasions between July 7, 2010 and February 15, 2011, saw psychiatric nurse Aimee Broussard on five occasions in 2011, and was tested or treated at Dauterive Hospital on nine additional occasions between May 1, 2009 and January 9, 2012.  There is no evidence that Mr. Meyers was neglectful of his cystic fibrosis.

The ALJ also discredited Mr. Meyers because "he has never been to the cystic fibrosis clinic for treatment."[77]  Mr. Meyers testified at the hearing that he lives in a small rural community, that his treating physicians have never referred him to a cystic fibrosis treatment center, but stated that he would be interested in seeking treatment at such a facility.[78]  There is no information in the record concerning the location of such a facility or its cost.  Therefore, it was inappropriate for the ALJ to base his RFC finding on Mr. Meyers's failure to seek treatment at such a facility.

The undersigned finds that the ALJ's RFC finding is not supported by substantial evidence and should, therefore, be reconsidered.

---

[77]     Rec. Doc. 7-1 at 47.

[78]     Rec. Doc. 7-1 at 47-48.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Mr. Meyers is not disabled is not supported by substantial evidence and was reached by the application of improper legal standards. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be REVERSED and REMANDED for further consideration in accordance with the foregoing discussion.  In particular, the Commissioner should (1) afford Mr. Meyers an opportunity to update the record by submitting his medical records for the time period from the date of the last hearing forward; (2) afford Mr. Meyers another hearing; (3) thoroughly evaluate whether Mr. Meyer's cystic fibrosis meets or medically equals a listing, carefully considering both the respiratory aspect and the digestive aspect of the illness; (4) thoroughly evaluate whether Mr. Meyers's claimed mental impairments are severe; (5) thoroughly evaluate whether Mr. Meyers's cystic fibrosis and mental impairments collectively meet or medically equal a list; (6)thoroughly evaluate Mr. Meyers's  residual functional capacity, (7) analyze whether a medical expert should be consulted in connection with evaluating Mr. Meyer's impairments, and (8) determine whether Mr. Meyers is disabled.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 14th day of July 2014.

COPY SENT:

DATE:   7/14/2014
BY:           EFA
TO:           RTH
                pj

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-23-